UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**BRIDGET COATES,**<br><br>Defendant. | No. 22-<br><br>**VIOLATION:**<br>18 U.S.C. § 1343 (Wire Fraud)<br><br>**FORFEITURE:**<br>18 U.S.C. § 981(a)(1)(C),<br>28 U.S.C. § 2461(c), and<br>21 U.S.C. § 853(p) |

**INFORMATION**

The United States Attorney charges that, at all times relevant to charges that, at all times material to this Information, on or about the dates and times stated below:

**COUNT ONE**
**(Wire Fraud)**

1.  Defendant BRIDGET COATES was the principal of the St. Thomas More School (the "School"), a Catholic parochial school, from at least 2012 until she resigned in 2018.

2.  The School was located in Washington, D.C.

3.  The School's Home School Association (the "HSA") was an association affiliated with the School. The HSA would raise funds from parent contributions and fundraisers, among other sources, to provide school-related services and activities to the students of the School.

4.  The HSA had a bank account at Capitol One bank in Washington, D.C.

5.  COATES had a bank account at Capitol One bank in Virginia.

**The Scheme**

6.      Between in or about June 2012 and continuing thereafter until in or about December 2017, within the District of Columbia and elsewhere, COATES devised a scheme to defraud the HSA, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.  In addition to using the HSA funds she so obtained to make personal purchases, COATES also used the HSA funds to help her qualify for a home-mortgage loan to purchase a home in Virginia, all as further described below.

**Manner and Means**

7.      As the School principal, COATES managed the School. The HSA authorized to COATES have access to a book of pre-signed checks, signed by the President and Treasurer of the HSA, to be used for only School-related purposes. The HSA account was necessary for running the School and thus the HSA vested COATES with discretion to determine which expenditures were necessary.

8.      At the time COATES wrote these checks to herself and deposited them into her personal bank account, the HSA authorized COATES to use the HSA checking account funds and related pre-signed checks for only school-related purposes. COATES knew that she was permitted to use the HSA's checking account funds and related pre-signed checks for only school-related purposes. COATES did not have authorization to use the HSA funds for personal purposes or purchases.

9.      However, from 2012 to 2017, COATES engaged in a pattern of purchasing personal goods and services with the HSA funds.  That is, between in or about June 2012 and continuing thereafter until in or about December 2017, COATES wrote approximately 66 unauthorized checks to herself totaling $260,783 from the HSA's Capitol One bank account. On

these checks, COATES completed the fields for the dollar amount, the memo line, and the recipient (herself). COATES then deposited these checks, totaling $260,783 of HSA funds, into her personal Capitol One bank account.

10. During this period, COATES also engaged in a pattern of using the HSA funds to refill her personal Capitol One bank account when her personal funds were low or over-drafted.

11. In 2013, COATES also engaged in a fraudulent scheme to utilize HSA funds to help her qualify for a home-mortgage loan to purchase a home in Virginia.  In order for COATES to obtain a mortgage to purchase her desired home, she needed a prove to the mortgage lender that she had sufficient funds in her bank account. Consequently, COATES wrote herself a check for $14,000 from the HSA bank account and deposited it in her personal bank account. COATES then wrote a letter to the mortgage lender that included a signature line indicating it was from a School teacher L.W. However, L.W. never wrote this letter and did not have knowledge of this scheme. This letter falsely stated that the HSA had awarded COATES a stipend of $14,000 for her efforts in procuring a particular grant for the School, and that this stipend did not need to be repaid. COATES then submitted this false letter to the mortgage lender in support of her mortgage application, and the mortgage lender granted her mortgage application. The HSA never awarded COATES the $14,000 as a stipend or for any other purpose. COATES also was never given permission to withdraw the $14,000 from the HSA as a stipend, bonus, or to use for her mortgage application.

12. COATES used at least $175,000 of the $260,783 that she deposited into her personal bank account from the HSA bank account for non-school related personal purchases without permission or authorization. COATES's unauthorized use of these HSA funds for personal purposes was knowing and intentional and not by mistake or accident.

**Executions of the Scheme**

13. On or about the following dates, within the District of Columbia and elsewhere, COATES, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted and aided and abetted the transmission by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds – that is, the digital transmissions effectuating the bank transfers set forth below – for the purpose of executing such scheme and artifice:

| DATE | AMOUNT OF BANK TRANSFER FROM THE HSA TO COATES |
|---|---|
| 05/30/2012 | $600 |
| 06/07/2012 | $900 |
| 06/20/2012 | $7,500 |
| 08/01/2012 | $7,500 |
| 08/04/2012 | $3,000 |
| 08/08/2012 | $4,999 |
| 09/07/2012 | $895.50 |
| 09/26/2012 | $1,000 |
| 10/09/2012 | $1,500 |
| 10/22/2012 | $8,500 |
| 12/19/2012 | $6,000 |
| 12/21/2012 | $5,010 |
| 01/23/2013 | $3,000 |
| 02/08/2013 | $1,578 |
| 02/12/2013 | $1,000 |
| 02/12/2013 | $2,500 |
| 02/26/2013 | $700 |
| 03/01/2013 | $1,250 |
| 04/08/2013 | $2,000 |
| 05/06/2013 | $2,500 |
| 06/05/2013 | $1,000 |
| 06/22/2013 | $6,000 |
| 07/10/2013 | $6,000 |
| 07/22/2013 | $1,000 |
| 08/09/2013 | $900 |

| DATE | AMOUNT OF BANK TRANSFER FROM THE HSA TO COATES |
|---|---|
| 09/09/2013 | $2,000 |
| 10/15/2013 | $800 |
| 10/31/2013 | $14,000 |
| 12/16/2013 | $3,500 |
| 01/27/2014 | $1,000 |
| 02/24/2014 | $750 |
| 03/12/2014 | $500 |
| 03/15/2014 | $800 |
| 04/16/2014 | $750 |
| 06/03/2014 | $250 |
| 06/03/2014 | $1,550 |
| 06/09/2014 | $6,600 |
| 06/20/2014 | $3,500 |
| 07/30/2014 | $1,500 |
| 10/10/2014 | $2,300 |
| 11/14/2014 | $2,000 |
| 11/21/2014 | $12,500 |
| 05/01/2015 | $5,000 |
| 06/01/2015 | $2,500 |
| 06/05/2015 | $3,500 |
| 06/24/2015 | $1,500 |
| 07/15/2015 | $5,600 |
| 08/10/2015 | $3,000 |
| 09/17/2015 | $3,000 |
| 10/19/2015 | $6,500 |
| 11/13/2015 | $1,500 |
| 11/23/2015 | $6,500 |
| 02/12/2016 | $1,000 |
| 03/25/2016 | $1,500 |
| 05/06/2016 | $2,000 |
| 06/26/2016 | $16,000 |
| 09/10/2016 | $5,000 |
| 10/16/2016 | $2,000 |
| 10/27/2016 | $12,000 |
| 11/23/2016 | $5,000 |
| 02/07/2017 | $650 |
| 02/16/2017 | $1,000 |
| 05/25/2017 | $3,000 |
| 07/07/2017 | $8,000 |
| 08/23/2017 | $10,000 |
| 11/02/2017 | $10,000 |
| 12/13/2017 | $15,500 |

**(Wire Fraud in violation of 18 U.S.C. § 1343; Aiding and Abetting,
Causing an Act to be Done in violation of 18 U.S.C. § 2)**

## FORFEITURE ALLEGATION

14. Paragraphs 1 through 13 of this Information are re-alleged for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

15. Upon conviction of Wire Fraud in violation of Title 18, United States Code, Sections 1343 set forth in Count One of this Information, the defendant, BRIDGET COATES, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.  The property to be forfeited includes, but is not limited to, a money judgment in the amount of $175,000.

16. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

**(Forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C);
28 U.S.C. § 2461(c); and 21 U.S.C. § 853(p))**

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:   */s/ Jeffrey S. Nestler*
        Jeffrey S. Nestler (D.C. Bar No. 978296)
        Marco Crocetti (D.C. Bar No. 166718)
        Assistant United States Attorneys
        U.S. Attorney's Office for the District of Columbia
        555 4th Street, N.W.
        Washington, D.C. 20530
        jeffrey.nestler@usdoj.gov
        202-252-7277

**DATED: March 7, 2022**