IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>     v.<br><br>**ADAM HARPER,**<br><br>     Defendant | Case No. 1:20-CR-00197-ABJ |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

The United States of America, through its counsel the United States Attorney for the District of Columbia, hereby files the Government's Memorandum in Opposition to Defendant's Motion for Early Termination of Supervised Release. The Court should deny the Motion.

### BACKGROUND

**The Underlying Offense**

In October of 2017, an Online Covert Employee ("OCE") with the Federal Bureau of Investigation ("FBI")/Metropolitan Police Department ("MPD") Child Exploitation and Human Trafficking Task Force ("CEHTTF") used a law enforcement tool to review a list of Internet Protocol ("IP") addresses that (1) had been recorded as sharing suspected child pornography images or videos, identified by their unique Infohash values,[1] on a peer-to-peer ("P2P") file sharing network;[2] and (2) were believed to resolve back to physical addresses located in the District of Columbia based on a commercial geolocation program utilized by the law enforcement tool. The

---

[1] An "infohash" is a number which uniquely identifies a torrent file based on the shared file(s) associated within the torrent file.
[2] P2P file sharing allows users to access media files such as books, music, movies, and games using a P2P software program that searches for other connected computers on a P2P network to locate the desired content.

1

law enforcement tool indicated that a specific IP address, which belonged to the Defendant, had been sharing images and videos, using a P2P network.

On various dates between October 26, 2017 and December 9, 2017, law enforcement used a P2P software client program to connect directly to the Defendant's IP address and computer, and initiated multiple downloads from the Defendant's IP address. On these dates, the UC was able to partially or completely download multiple files, including images and videos depicting the sexual abuse of children.

On February 12, 2018, a search warrant issued by a magistrate judge from the United States District Court for the District of Columbia was executed at the Defendant's residence. When law enforcement entered the Defendant's residence, they observed that a computer belonging to the Defendant was open and unlocked. By viewing the computer monitor, officers were able to see that the Defendant was connected to the internet, and was using a P2P file sharing service to actively download numerous files, dozens of which had file names indicative of television shows and movies. A list of titles observed in the process of downloading, included: Detective Conan, A Plastic Ocean, A Spaceman Commeth, A Tree Grows in Brooklyn, A Perfect Day and An Affair in Havana. Additionally, some of the file names that were observed by agents during the execution of the search warrant were indicative of child pornography.

As a result of the search warrant, numerous laptops and hard drives (hereinafter, "digital devices") belonging to, and used by, the Defendant were seized. The digital devices seized pursuant to the search warrant were forensically examined by a computer forensic examiner. Some of these digital items contained artifacts which demonstrate that the Defendant was using various P2P services and the internet to actively download files, including copyrighted television shows and motion pictures, and makings these items available to other individuals utilizing P2P file

sharing services. For example, on a Drop DRPR1-A External Storage Device found inside the Defendant's residence, there were eleven folders. Three of these folders were labeled as: torrents files; Torrents complete; and torrents temps. Each of these folders had a last modified date of February 12, 2018 – the date that the search warrant was executed at the Defendant's residence. Inside the "Torrents complete" folder were several copyrighted television shows and motion picture movies, including: two episodes of the television series "Altered Carbon"; the animated movie "Coco"; the movie "Phantom Thread"; the movie "Legends of Tomorrow"; the movie "Columbian Teens 3(Evil Angel)"; the movie "Shot Caller"; the movie "When We First Met"; and the movie "Killer's Kiss." The movies "A Plastic Ocean" and "Detective Conan" were also contained in this folder. The forensic examiner was able to observe that, in total, this device contained over 1,000 commercially produced motion pictures, eight television documentaries, and 187 television shows. On the Drobo B1200i External Storage Device, there was a folder entitled "Movies". This folder had a last accessed date of February 11, 2018, the day before the search warrant was executed. There were over 9,000 copyrighted and commercially produced movies inside this folder, including: A Bad Idea Gone Wrong; A Demon Within; A Futile and Stupid Gesture; Accident Man; and It Comes at Night. On a Passport External Hard Drive, recovered from inside the Defendant's residence, there were eight created user folders, labeled as follows: 1.007 James Bond The Ultimate Edition -24 - Spectre 2015; 2. Midsomer Murder Season 09; 3. Midsomer Murder Season 10; 4. Midsomer Murder Season 11; Midsomer Murder Season 12; Saturday Night Live Season 42; 7. South Park Season 21 incomplete; and 8. Star Trek - 13 - Star Trek Beyond 2016 1080p. The forensic examination of this device indicated that the majority of these folders contained full seasons of copyrighted television series.

As part of his Plea Agreement, the Defendant admitted that he improperly downloaded over 2,500 videos, which included copyrighted television shows and motion pictures, using P2P file sharing services and the internet.  Of these 2500 videos, more than 10 of the videos were downloaded between October 26, 2017 and February 12, 2018, and the value of the videos downloaded during that time period had a value of at least $2500.   Furthermore, the Defendant admitted that by using this P2P software, to download images and videos, he knew that he was unlawfully doing so, and that he was distributing them, by making them available to other individuals using P2P file sharing services and the internet.

The Defendant pled guilty on December 3, 2020, to a one count information charging him with Criminal Infringement of a Copyright, in violation of 17 U.S.C. § 506(a)(1)(B) and 18 U.S.C. § 2319(c)(1). On February 23, 2021, the Defendant was sentenced to serve a thirty-six month term of probation, with special conditions including allowing the U.S. Probation Officer to install computer monitoring software on any computer that he uses.  *See* ECF Doc. 17 at 4 (Judgment in a Criminal Case).

On May 19, 2022, the Defendant filed the instant Motion for Early Termination of Supervised Release.

**ARGUMENT**

As Defendant notes, he has served less than half of his term of supervised release. The Government does not dispute Defendant's assertions that – for the most part- he has performed successfully while on release.  The Defendant's compliance with his conditions, however, does not justify early termination of supervised release in a case of this nature.  This is particularly so where the nature of his offense – which included using P2P software to illegally download copyrighted materials, and which is commonly used to disseminate child sexual abuse material -

4

is far too easy to accomplish again were the Defendant to use a computer without the mandated monitoring software.

**Legal Standard**

All post-sentencing changes to the terms of a defendant's supervised release are governed by 18 U.S.C. § 3583(e).  The Court may terminate the defendant's supervised release "at any time after the expiration of one year of supervised release" if the Court is satisfied that two requirements are met.  *See* 18 U.S.C. § 3583(e)(1).  First, early termination must be "warranted by the conduct of the defendant released." *Id*.  Second, early termination must be in "the interest of justice." *Id*.

In deciding whether a modification is warranted, the Court can and should consider the statutory factors in Title18 U.S.C. § 3553(a), such as deterrence, public safety, rehabilitation, and consistency in sentencing.

Based on these factors, the full term of supervised release imposed at sentencing is necessary for public safety – that is, to ensure that the defendant does not have unmonitored access to the internet lest he re-offend.  Moreover, it is important to deter similarly situated persons from engaging in similar criminal conduct, including the illegal downloading of copyrighted materials and the ability for others to disseminate child pornography using the Defendant's P2P software.  From the Government's perspective, the supervised release is working as intended: The Defendant has improved not in spite of but because of the conditions of release.   To allow the Defendant to terminate his supervised release early merely because he has complied with his conditions would undermine the integrity of his sentence and all of the considerations that went into its imposition.

Of note here, courts have found that mere compliance with conditions of release is not enough to warrant early termination of supervised release. This is because the "[m]odel prison conduct and full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination." *United States v. McKay*, 352 F. Supp. 2d 359 (E.D.N.Y. 2005). *See also United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) (finding that while the defendant's "post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule.") Although one of the purposes of supervised release is to provide rehabilitation, "even 'model prison conduct and full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination.'" *Folks v. United States*, 733 F. Supp. 2d 649, 652 (M.D.N.C. 2010); *United States v. Weintraub,* 371 F.Supp.2d 164, 167 (D.Conn.2005) (noting that "[a]lthough [the defendant's] ongoing and full compliance with all conditions of supervised release, including payment of the fine and restitution, is commendable, in the end that is what is required of all criminal defendants and is not a basis for early termination of his supervised release"); *United States v. Caruso,* 241 F.Supp.2d 466, 469 (D.N.J.2003) (ruling that "mere compliance with the terms of probation or supervised release is what is expected of probationers, and without more, is insufficient to justify early termination"). Accordingly, the defendant must show something "of an unusual or extraordinary nature" in addition to full compliance. *United States v. Caruso*, 241 F. Supp. 2d 466, 469 (D. N.J. 2003).

Here, although Defendant has performed commendably on release, the Defendant has not satisfied the requirement to show extraordinary reasons call for termination of his conditions, and certainly not after serving less than half of the length of his term of supervised release. Rather, there is nothing unusual or extraordinary in the fact that the Defendant has remained law-

abiding, and fulfilled his conditions of release (but for actively seeking employment). These are requirements that one would expect of an individual who is on supervised release after committing a criminal act. While the Government commends the Defendant for his successes during his brief period of supervision, the Government also wants to ensure that the Defendant continues on this path.

Moreover, the Defendant does not explain how his online activities will be monitored to prevent and deter him from engaging in the same offense conduct without monitoring software and the knowledge that he is subject to inspection by the U.S. Probation Office. That is a critical component of the "interests of justice" assessment that counsel against early termination.

## CONCLUSION

Accordingly, the Government respectfully requests that this Court deny Defendant's motion to terminate his supervised release early.

Dated: May 19, 2022

Respectfully submitted,
MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: ___/s/_____
AMY E. LARSON
Assistant United States Attorney
N.Y. Bar No. 4108221
601 D. Street NW
Washington, D.C. 20530
202-252-7863
Amy.larson2@usdoj.gov